BARNETTE, Judge.
Plaintiff instituted suit against defendants in solido for recovery of an alleged balance due of $1,046.80 for materials furnished to defendants in the operation of certain movie theatres. Plaintiff acknowledged receipt of payment of $769.68, reducing the balance alleged due to $1,046.-80. Defendants contend that the $769.68 paid was in full settlement of the amount due, invoking the principles of accord and satisfaction in support of their defense and plea of estoppel. From a judgment in favor of plaintiff in the sum of $870.93, defendants have appealed.
In his written reasons for judgment, the district court judge has very ably discussed the issues in this case and the law applicable thereto, which we quote in full below:
“National Screen Service instituted the within suit against Joy Theatres, Inc. and Tidelands Cinema, Inc., in solido, alleging that the defendants owed plaintiff a bal-anee of $1046.80 for ‘trailers and posters,’ [1] which were sold to the defendants by the plaintiff. Payment of $769.68 is acknowledged, reducing the balance due to the amount for which judgment is prayed, i. e., $1046.80.
“The testimony, and the written evidence, introduced on the trial of this cause indicates that the defendants have been doing business with plaintiff over a number of years, during which time the ‘trailers and posters’ were purchased from plaintiff, who fixed the price for such material, and the defendants paid that sum charged to them by plaintiff. The testimony also shows that the price was never definitely fixed and plaintiff has, over the years, increased the price charged until the rate finally charged for the ‘trailers’ was $25.00 per week.
“After being billed for ‘trailers and posters’ purchased during the period from June 1, 1967, to October 11, 1967, the defendants decided that the amount for which they were being charged was excessive. It is the defendants’ contention that plaintiff was able to charge the amount they were charging for the reason that plaintiff held a monopoly on this type of business or service.
“While no special defense was raised in the answer of defendants that the ‘trailers and posters’ for which defendants were billed had not been received and used by defendants, on the trial of the case defendants’ witness attempted to show that they did contend that the service was not entirely satisfactory. The Court is of the opinion that there is no merit to defendants’ contention, even though plaintiff has not been able to prove, by competent evidence, that the items for which it is billing defendants were actually delivered.
“In defendants’ letter of the 24th of October, 1967, addressed to plaintiff, Mr. *419 Houck, President of Tidelands Cinema, Inc., stated:
'* * * I would like to discuss these charges personally and see if we could get together, as I have told former managers I would not pay $25.00 per trailer. * * * Therefore, I am enclosing check for the trailers, except that I am not paying for 4 or 5 weeks on any one trailer, as the price is absolutely ridiculous.’
“No mention whatever was made to the effect that the ‘trailers’ were not received, or were unsatisfactory. The only complaint was as to the price charged. Similarly, it will be noted that in making out the various checks which make up the total sum of $769.68 the various ‘trailers’ are designated by name and theatre on the vouchers. This fact would certainly indicate that the defendants had received them. Obviously, the defendants would not have offered payment — of any sum — if the ‘trailers’ had not been received.
“The Court has not been referred to any authority which would deny to a conveyor or purveyor of merchandise or services the right to charge whatever such conveyor or purveyor thought his merchandise or services were worth. In the absence of any specific agreement as to price, either oral or in writing, the purchaser or receiver of such merchandise or services certainly has no right to arbitrarily determine what the price of such merchandise or services should be. If any such rule of law would prevail then every such conveyor or purvey of merchandise or services would be at the mercy of the purchaser of such merchandise or services.
“Defendants’ claim that they had the right to refuse to pay plaintiff the price charged, for the reason that plaintiff’s operation was a monopoly, is equally without merit, insofar as this forum is concerned.
“If the theatres in New Orleans choose to fix the price of admission to their movie houses at $5.00, and an individual felt that the charge was ‘absolutely ridiculous’; that the film showing was not worth the price of admission; that the producer was making too large a profit; that the only reason such an admission charge was being made was because of the monopoly enjoyed by the theatres, or because of some form of agreement between the theatre operators; could that individual tender an admission price which he felt proper and adequate and insist on being admitted into the thea-tre? The answer is obvious. Defendants’ witness admitted in such an instance the individual would not be admitted to the theatre (he might even be arrested for trying).
“The Court is of the opinion that the amount claimed by plaintiff is justly due and owing to it by the defendants. The sole question for determination by this Court is whether or not the plaintiff accepted the checks totalling $769.68 in full settlement of the amount which was due it by the defendants.
“As stated above, the letter from the defendants’ president clearly set forth the fact that he was sending checks in payment of his account on the basis of certain amounts per ‘trailer’, which he fixed, without regard to whether or not the ‘trailers’ were used for one or more weeks. No mention, whatsoever, is made of the fact that the checks are being tendered in ‘full payment’ nor do either the checks or the vouchers attached to the checks bear any notation to that effect. The testimony is to the effect that Mr. Houck told the plaintiff’s representatives that if the plaintiff wanted to recover more than the amount of the checks, plaintiff would have to file a suit therefor. This testimony of plaintiff’s representative is not, in the Court’s opinion, contradicted.
“It is so well settled, as not to require citations, that in order to maintain a plea of estoppel based on the doctrine of accord and satisfaction there must be present: (1) A disputed unliquidated claim, (2) A tender made by the debtor in full payment of *420 the claim, and (3) An acceptance of the tender by the creditor.
“As stated hereinabove, the checks tendered did not have any notation thereon, that they were given in full payment of the indebtedness, nor did the plaintiff ever indicate by any of its actions that it was accepting the checks in full payment of the indebtedness.
“Contrary to nearly every case wherein the doctrine of accord and satisfaction has been discussed, this is not a case wherein there was any dispute as to the amount which was due in the sense that the price of the item or articles was not as agreed between the parties, which is what generally creates the dispute. In the instant case there was never any fixed price for the ‘trailers’. Plaintiff fixed the price, and defendant paid the price, up to a given date. He (defendant) then decided that the price was ‘absolutely ridiculous’. He did not dispute the fact that plaintiff had the right to fix the price.
“In defendant’s letter of October 24th, 1967, he stated that he was enclosing check [s] for the ‘trailers’, except that he was not paying for 4 or 5 weeks on any one ‘trailer’. He made no mention of the fact that the payment was tendered in full payment. He merely stated that he was paying, in effect, for one week of use at the $25.00 rate and would leave for judicial determination the question of whether or not the plaintiff was entitled to the charge for the additional weeks’ use of the ‘trailers’. The testimony of all witnesses is to the same effect.
“The dispute, as shown by the correspondence, was centered around the fact that plaintiff refused to sell ‘trailers’ to defendant except for cash. No amount was paid to plaintiff until plaintiff refused to extend further credit to defendant. It was following plaintiff’s threat of suit that defendant sent checks, as stated above, to cover one week’s use of the ‘trailers’. In the letter of November 2nd, 1967, the plaintiff acknowledged receipt of the checks totalling $769.68 against the indebtedness of $1640.61 and stated that there was a balance still due of $870.93, for which plaintiff was calling upon defendant for payment. This clearly showed that plaintiff was not accepting the $769.68 in full settlement.
“In counsel’s memorandum on behalf of defendant, the statement is made that ‘Moreover, counsel stipulated at the trial that there had been a dispute between the parties about the amount due.’ The Court was unable to find among his notes any reference to any such stipulation. A review of the reporter’s notes indicates that when a discussion arose, during the trial, as to the admissibility of the judgment in connection with an antitrust suit, plaintiff’s counsel made the following statement: T will admit that there was a dispute, your Honor.’ No mention was made to the effect that the dispute was as to the amount due. It is the Court’s impression that the statement had reference to the dispute as to whether or not plaintiff did have a monopoly.
“For the reasons herein set forth, the Court is of the opinion that the doctrine of accord and satisfaction is not applicable to the facts of the instant case.
“Although plaintiff has sued for $1046.-80 it does not appear that sufficient proof has been introduced to warrant a judgment in that amount. The letter of November 2nd, 1967, indicates a balance of $870.93 after credit was given for the $769.80, and it would appear that no charges were made thereafter. Therefore, there will be judgment herein in favor of plaintiff in the amount of $870.93 with legal interest from judicial demand and all costs.” (Emphasis in the original.)
For defendants to be successful in their plea of accord and satisfaction, all three elements enumerated by the trial court judge must be proven. See Pontchartrain Park Homes v. Sewerage & Water Bd., 246 La. 893, 168 So.2d 595 (1964) ; Burnett v. State Farm Mutual Automobile *421 Ins. Co., 192 So.2d 574 (La.App. 3d Cir. 1966); Jones v. Standard Life & Accident Insurance Co., 129 So.2d 84 (La.App. 3d Cir. 1961); and Davis-Wood Lumber Co. v. Farnsworth & Co., 171 So. 622 (La.App.Orleans 1937). It is evident from a reading of his reasons for judgment that the district court judge felt that none of these elements had been proven. After a careful review of the testimony, exhibits and evidence filed in the record, we must agree with this conclusion.
It is significant that nowhere on any of the checks issued by defendants to plaintiff is there any notation indicating that the checks were given in full settlement of the indebtedness. Defendants argue that the letter of October 24, 1967, written by Mr. Houck, president of defendant corporation, to Leslie D. Gurvey, New Orleans branch manager of plaintiff corporation, evidences an intent that the checks were given in full settlement. The pertinent part of the letter is the following:
“Therefore, I am enclosing check for the trailers, except that I am not paying for 4 or 5 weeks on any one trailer, as the price is absolutely ridiculous. * * *”
This cannot be construed to mean more than a refusal to pay the account in full and only to pay an amount which the debt- or arbitrarily determined to be a reasonable charge for the trailers. An acceptance of this payment on account was not an acceptance in full payment, but rather an acceptance of Mr. Houck’s challenge to sue for the balance. Mr. Houck’s main interest in writing the letter was to express his dissatisfaction with what he termed the monopolistic practices of the plaintiff. The testimony of Houck and Waddy F. Jones, then an employee of defendants and who accompanied Houck to the office of Mr. Gurvey, was to the effect that Houck informed Gurvey that payment of the checks was in full settlement of the debt. This testimony was contradicted by Mr. Gurvey. We agree with the trial court that there has not been proven an intent on behalf of defendants that the checks were given in full payment; but rather that Houck simply refused to pay more and challenged the plaintiff to bring suit against him for the balance. Certainly there was no mutual understanding that the checks were accepted in full settlement of the account. Selber Bros., Inc. v. Newstadt’s Shoe Stores, 203 La. 316, 14 So.2d 10 (1943). In that case the Supreme Court quoted with approval from American Forwarding & Mercantile Co. v. Lindsay Chair Co., 129 Ill.App. 548, as follows:
“* * * ‘It is one thing to inform a creditor when sending a check that the debtor will not pay any more and a very different thing to advise him that the check is sent upon condition that if he accepts it, he will do so in full settlement of the account.’ ” 14 So.2d at 14.
We also agree with the district court that it has not been proven that there existed an honest and genuine dispute between the parties as to the amount which was due by the defendants to the plaintiff under the terms and conditions of the agreement between them. Mr. Houck acknowledged that the price of the trailers had been set by the plaintiff in the past and that he had paid these prices up until October, 1967. His complaint throughout all these proceedings is not that plaintiff was charging a price inconsistent with the contractual arrangement between the parties but rather that because of plaintiff’s alleged monopolistic position in the industry, the prices being set were unrealistic and “absolutely ridiculous.” The defendants’ allegations that plaintiff enjoys a monopoly in the production and distribution of trailers are not relevant to the issues in this case. The account sued on is not a disputed or unliquidated claim meeting the requirements necessary to bring the case within the principles of accord and satisfaction.
Finally, it is evident that at no time did plaintiff convey to defendants an intent to accept the checks as full payment of the *422 debt. All of the correspondence placed in the record — letters from representatives of plaintiff to the defendants and correspondence between representatives of the plaintiff — shows that the plaintiff corporation contended at all times that there was a balance still due for the trailers. The testimony of Mr. Gurvey is also to this effect.
In support of their argument defendants have cited the cases of Meyers v. Acme Homestead Ass’n, 18 La.App. 697, 138 So. 443 (La.App.Orleans 1931); and Braudaway v. United Equitable Ins. Co., 208 So.2d 359 (La.App. 4th Cir. 1968). While the Meyers case gives an excellent discussion of the principles of accord and satisfaction, it is not apposite factually to a determination of the issues in this case, because as in all cases where the principle is involved its application depends upon a factual determination as to whether or not the necessary elements have been proven. The Braudaway case is more closely aligned factually with the instant case, but there it was shown that an actual dispute did exist as to the terms of an insurance contract and that the defendant did specifically inform plaintiff by letter that the payment was given in full settlement.
Defendants contend that plaintiff has the burden of proving the elements of his claim; and where plaintiff sues to recover for the sale and delivery of merchandise, it must prove the delivery of the merchandise. Defendants argue that the district court erred in holding that although plaintiff did not prove by competent evidence that the items were actually delivered, this was unnecessary in view of the fact that Mr. Houck did not complain of nondelivery in his letter of October 24, 1967, and that in making out the checks sent to plaintiff the various trailers were designated by name and theatre on the vouchers. We agree with the conclusions of the trial court judge that these circumstances would certainly indicate at least a tacit acknowledgement of the receipt of the trailers, relieving plaintiff of this burden of proof. It should also be noted that at no time did Mr. Houck state that he did not receive the trailers, but rather his testimony was concerned with the poor services allegedly given by plaintiff.
One of the items in the account charged to these defendants was for trailers or other material supplied to Joy’s Eastgate Theatre in Monroe in the amoimt of $121.93. Defendants contend, alternatively, that in no event should they be held liable for this item and that the judgment, if affirmed, should be reduced accordingly.
It was stipulated that Tidelands Cinema, Inc., does not own Joy’s Eastgate, as it does the other theatres named herein, but Mr. Houck testified that Joy Theatres, Inc., is the booking and servicing agent for Joy’s Eastgate just as it is for the theatres owned by Tidelands.
There has been no question raised of defendant Joy Theatres, Inc.’s obligation in solido with Tidelands for the materials and services booked by it for Tideland’s use. All these corporate entities are closely related and Joy Houck is president of both the defendant corporations in this suit. The record does not disclose his personal connection with Joy’s Eastgate, if any, but the defendant Joy Theatres, Inc., is the admitted booking and servicing agent for Joy’s Eastgate. It appears that all these corporations are interrelated.
If Joy Theatres, Inc., one of the defendants in this suit, is obligated in solido with the other defendant, Tidelands, by reason of its booking and servicing relationship, which is not denied, then for the same reason it would also be obligated in solido for the accounts booked by it for Eastgate. Since Joy’s Eastgate is not a party defendant in this suit, we hold that Joy Theatres, Inc., is liable for the account sued on to the extent of the item of $121.93 for trailers furnished Joy’s Eastgate and is liable in solido with Tidelands for the balance of the $870.93; and the judgment appealed will be amended accordingly.
For these reasons the judgment in favor of National Screen Service Corporation *423 and against Joy Theatres, Inc., and Tidelands Cinema, Inc., in the sum of $870.93 is amended, and there is now judgment in favor of National Screen Service Corporation against Joy Theatres, Inc., in the sum of $121.93 and judgment in favor of National Screen Service Corporation against Joy Theatres, Inc., and Tidelands Cinema, Inc., in solido, in the sum of $749.00. In all other respects the judgment is affirmed at appellant’s cost.
Amended and affirmed.

. “Trailers” are pieces of film taken from the full-length motion picture and used by the theatre as a preview of the picture to be shown at a later date. “Posters” are, as their name implies, used for display purposes in the lobby of the theatres.